UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOANNE KINNER,

                Plaintiff,

     V.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**REPORT AND RECOMMENDATION**

08-CV-1240
(NAM/VEB)

## I. INTRODUCTION

In April of 2005, Plaintiff Joanne Kinner filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she is unable to work since April 12, 2000, due to multiple impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through her attorneys, Erwin, McCane & Daly, Thomas C. Erwin, Esq., of counsel, commenced this action on November 18, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On November 5, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff filed an application for SSI benefits on April 28, 2005, alleging disability beginning on April 12, 2000. (T at 36-39).[1] The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (T at 26-29, 31-32). On October 11, 2007, Plaintiff appeared, along with her attorney, in Albany, New York and testified at a hearing conducted before ALJ Richard Desteno, who appeared via videoconference from Newark, New Jersey. (T at 18, 290-315). On November 16, 2007, ALJ Desteno issued a written decision denying the application for benefits. (T at 15-24). The ALJ's decision became the Commissioner's final decision on September 26, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 4-7).

Plaintiff, through counsel, commenced this action on November 18, 2008. (Docket No. 1). The Commissioner interposed an Answer on March 6, 2009. (Docket No. 8). Plaintiff filed a supporting Brief on April 20, 2009. (Docket No. 9). The Commissioner filed a Brief in opposition on July 20, 2009. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that this case be remanded to the Commissioner for further proceedings.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

   **1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 28, 2005. (T at 23). He concluded that the medical evidence established that Plaintiff had a "severe" impairment, including bipolar disorder and substance abuse, but that the evidence did not indicate that Plaintiff's impairments met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 23). The ALJ determined that Plaintiff was disabled under the Act considering her substance abuse. (T at 23). However, the ALJ found that in the absence of substance abuse, Plaintiff's bipolar disorder would not cause greater than a slight or minimal effect on her ability to perform basic work activities. (T at 23). Thus, the ALJ concluded that substance abuse was a contributing factor material to the disability determination, meaning that Plaintiff was not entitled to benefits under the Act. (T at 23-24). As noted above, the

ALJ's decision became the Commissioner's final decision on September 26, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 4-7).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers two (2) principal arguments in support of her position.  First, Plaintiff asserts that the ALJ erred in finding that her substance abuse was a contributing factor material to the disability determination.  Second, Plaintiff contends that the ALJ did not afford appropriate weight to the assessments offered by her treating psychiatrist and the Social Security Administration's consultative examiner.

### a. Substance Abuse Standard

The Social Security Act establishes that "an individual shall not be considered disabled ... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

Thus, "substance abuse becomes material to a benefit determination only after the claimant is found to be disabled" according to the sequential analysis. <u>Roy v. Massanari</u>, No. 3:01-CV-306, 2002 WL 32502101, at *2 n. 3 (D. Conn. June 12, 2002); <u>see</u> 20 C.F.R. § 404.1535(a).

The "plain text of the regulation" requires the ALJ to first use the standard sequential analysis to determine whether the claimant is disabled, "without segregating out any effects that might be due to substance use disorders." <u>Day v. Astrue</u>, No. 07-CV-157, 2008 WL 63285, at *5 (E.D.N.Y. Jan 3, 2008) (quoting <u>Brueggemann v. Barnhart</u>, 348 F.3d 689, 695

6

(8th Cir.2003)); see e.g., Orr v. Barnhart, 375 F.Supp.2d 193, 201 (W.D.N.Y. 2005) (remanding to require the ALJ "to consider the ill effects that plaintiff's alcoholism had on her impairments and limitations" when determining the issue of disability and "only after finding that plaintiff is disabled, determine which impairments would remain if plaintiff stopped using alcohol").

Once the threshold disability determination is made, the ALJ then considers "whether the individual would continue to meet the definition of disability even if drug and/or alcohol use were to stop." SSR 82-60. If the claimant would still meet the definition even if the substance abuse were to end, then substance abuse is not a contributing factor material to the disability determination. Id. "The drug addiction and alcoholism requirements are imposed only where (1) the individual's impairment(s) is found disabling and drug addiction and/or alcoholism is a contributing factor material to the determination of disability, and (2) the same impairment(s) would no longer be found disabling if the individual's drug addiction or alcoholism were eliminated, as, for example, through rehabilitation treatment." Id.

The claimant bears the burden of proving that substance abuse is not a contributing factor material to the disability determination. White v. Comm'r of Soc. Sec., 302 F.Supp.2d 170, 173 (W.D.N.Y.2004).

In this case, as noted above, the ALJ concluded that Plaintiff was disabled when considering the effects of her substance abuse. However, the ALJ further found that Plaintiff did not continue to meet the definition of disability when her substance abuse stopped. (T at 23). Plaintiff has been in an extended period of recovery from substance abuse and was in a state of sobriety at the time of the hearing. Accordingly, the ALJ found

that Plaintiff's substance abuse was a contributing factor material to the disability determination.

### b.     Assessment of Plaintiff's Treating Psychiatrist

Plaintiff challenges this conclusion, pointing to the assessment of Dr. Potenciano, her treating psychiatrist, which was rendered during a period of sobriety in June 2005. In that assessment, Dr. Potenciano opined that Plaintiff suffered from post-traumatic stress disorder and bipolar disorder. (T at 106). He noted that Plaintiff was depressive and anxious and experienced auditory hallucination. (T at 110). Plaintiff's attitude, appearance, and behavior were noted to be "appropriate," but here mood and affect were described as "depressed." (T at 110). Her sensorium and intellectual functions were found to be "intact" and her insight and judgment were noted to be "fair." (T at 110). Dr. Potenciano opined that Plaintiff did not have the capacity to function in a work setting due to "mood and psychotic symptoms." (T at 111). Dr. Potenciano further found that Plaintiff had no limitation with regard to understanding and memory, but was limited in terms of maintaining sustained concentration and persistence ("due to mood/emotional symptoms"), limited as to social interaction, and limited with respect to adaption ("easily depressed and overwhelmed"). (T at 113). Lastly, Dr, Potenciano opined that abstinence from alcohol and drugs was "significant to recovery." (T at 113).

### c.     Consultative Examiner's Assessment

Plaintiff also points to the August 2005 assessment of Dr. Annette Payne, Ph.D, a consultative examiner. Dr. Payne described Plaintiff's mood and affect as "[a]nxious and depressed." (T at 138). Although her sensorium was noted to be clear, and she was alert

and oriented, Dr. Payne found Plaintiff's attention and concentration "[i]impaired due to emotionality." (T at 138). Plaintiff's recent and remote memory skills were likewise found to be impaired. (T at 138). Her cognitive functioning was assessed in the average to low average range, with "fair" insight and judgment. (T at 139).

Dr. Payne concluded that Plaintiff could follow and understand simple directions and instructions and could perform simple tasks. (T at 139). However, Dr. Payne opined that Plaintiff would have problems with attention and concentration, along with difficulties learning new tasks, performing complex tasks, and making appropriate decisions. (T at 139). Dr. Payne assessed that Plaintiff would have difficulty relating to others and dealing with stress. (T at 139). Overall, Dr. Payne concluded that Plaintiff's psychiatric difficulties were "moderately to severely limiting." (T at 139).

Dr. Payne diagnosed Plaintiff as suffering from polydrug dependence, bipolar disorder, and posttraumatic stress disorder (moderate to severe). (T at 140). She described Plaintiff's prognosis as "fair," opined that she would benefit from vocational rehabilitation, and noted that she had a "moderate" risk of relapse after 4 ½ months of sobriety. (T at 140).

### d.   ALJ's Failure to Re-Contact

Plaintiff argues that the assessments of Drs. Potenciano and Payne, which were rendered during a period of sobriety, establish that substance abuse is not a contributing factor material to the disability determination.

The ALJ did not give controlling weight to the findings of Drs. Potenciano and Payne. With respect to Dr. Potenciano, the ALJ noted that the June 2005 examination was only Plaintiff's second visit with the doctor. (T at 22). Further, the ALJ discounted the findings

because Dr. Potenciano had "assessed symptoms and limitations without commenting on the effect that substance abuse had on the claimant's medical condition." (T at 22). The ALJ also noted the findings of Dr. Julia Stunkel, who opined that Plaintiff was "disabled due to substance abuse problems" and unable to work "due to time demands of treatment program." (T at 22, 124).

The ALJ gave "little weight" to Dr. Payne's functional assessment because Dr. Payne "failed to assess the impact of substance abuse on her conclusions." (T at 22).

This Court finds that the ALJ failed to adequately develop the record. The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, sua sponte, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

As discussed above, the ALJ discounted the assessment of Dr. Potenciano, Plaintiff's treating psychiatrist, on three grounds: (1) the assessment was rendered early in the treating relationship, (2) Dr. Potenciano did not comment on the effect that Plaintiff's substance abuse had on her limitations, and (3) because his findings were contrary to

10

those of Dr. Stunkel.

The ALJ could have easily addressed the first two items by re-contacting Dr. Potenciano. Plaintiff was still treating with Dr. Potenciano at the time of the hearing (October 2007, more than two years after the June 2005 report). (T at 298). If the ALJ felt that the June 2005 report was rendered too early in the treating relationship, he should have contacted Dr. Potenciano and inquired as to whether the doctor maintained the same opinion. Moreover, if the ALJ believed that Dr. Potenciano's report was deficient because it did not adequately address the impact of Plaintiff' substance abuse on her limitations, the ALJ was obliged to re-contact Dr. Potenciano and request that information. As to item number (3), Dr. Stunkel appears to be Plaintiff's family doctor with no expertise in the field of psychology. The ALJ provided no explanation to justify crediting Dr. Stunkel's finding as to the cause of Plaintiff's mental impairments over the assessment of Plaintiff's treating psychiatrist.

The ALJ concluded that Plaintiff has had significant functional limitations: marked restrictions of activities of daily living, mild difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence or pace. (T at 22). However, he found that the restrictions would be only mild in the absence of substance abuse. (T at 22). The ALJ should not have made such a sweeping finding, given that the records from Plaintiff's treating psychiatrist and the consultative examiner were from early in Plaintiff's period of sobriety and did not specifically address the impact of substance abuse on her limitations. At a minimum, the ALJ was obligated to re-contact the treating psychiatrist and request an updated and complete assessment. See 20 C.F.R. §404.1512(e) ("When the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are

11

disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions . . . [w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available.").

The Commissioner points to evidence indicating that Plaintiff's mental impairments improved during periods of sobriety, impliedly suggesting her improvement constituted circumstantial evidence that she was not disabled but for her substance abuse. Her improvement is undisputed and unsurprising. However, the question is not whether Plaintiff was more severely limited when she was engaged in substance abuse, but rather whether she continues to meet the definition of disability during sobriety. Plaintiff testified that she was unable to maintain full-time employment, even when sober, due to bipolar episodes. (T at 299-300). She also testified that she experienced manic episodes (*e.g.,* waking up in the middle of the night and baking or painting) and depressive episodes (*e.g.* lying in bed for days unable to arise) even while sober. (T at 310-12). Before discounting this testimony and deciding not to give controlling weight to the assessment of Plaintiff's treating psychiatrist, the ALJ was obligated to ensure that the record was up to date and complete.

Lastly, this Court is troubled by the apparent lack of diligence on the part of Plaintiff's counsel. This Court would expect Plaintiff's counsel to have taken note of the fact that the assessment of Plaintiff's treating psychiatrist would play a key, if not controlling, role in determining whether Plaintiff was disabled. Thus, counsel's failure to obtain an updated and complete assessment is difficult to justify.

However, it is well-settled that the ALJ's obligation to develop the record exists even where, as here, the claimant is represented by counsel. See, e.g., Colegrove v. Comm'r of

Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005) (noting that ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel"); Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel . . . .").

Because this Court finds that the ALJ did not fulfill this obligation by obtaining readily accessible follow-up information, a remand is necessary, notwithstanding any responsibility Plaintiff's counsel may have in terms of the failure to fully develop the record. However, consideration should be given to the diligence of Plaintiff's counsel in this regard in the event that a request for attorneys' fees is made. See Bryant v. Apfel, 37 F. Supp.2d 210, 214 (E.D.N.Y. 1999)(noting awarding attorneys' fees when remand results from counsel's failure to develop the record "create a perverse incentive for a plaintiff's counsel to fail to develop the record at the administrative appeals level and before the district court if he or she has any doubt whether the additional records will support the client's claim").

Accordingly, this Court recommends that this matter be remanded for further proceedings. Specifically, the Commissioner should re-contact Dr. Potenciano to determine whether the limitations noted in his 2005 assessment continued during Plaintiff's period of sobriety and to determine the extent to which Dr. Potenciano believes that Plaintiff's substance abuse was a contributing factor material to the disability determination. See Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) ("Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'")(quoting 42 U.S.C. §

405 (g)); Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008) (noting that is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim").

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Dated:   February 4, 2010

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 4, 2010

Victor E. Bianchini
United States Magistrate Judge

16